**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **1776 AMERICAN PROPERTIES IV** | § | **CASE NO.  17-30422-KKB** |
| **LLC, et. al.**[1] | § | |
| | § | **Jointly Administered** |
| | § | |

**EMERGENCY MOTION FOR ORDER (A) AUTHORIZING AND APPROVING THE SALE OF 5626 ANTOINE DRIVE, UNITS 203, 1603, AND 1604, HOUSTON, TEXAS 77091, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUBRANCES AND OTHER INTERESTS, AND (B) APPROVING THE RESIDENTIAL CONDOMINIUM CONTRACT**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEF THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE A RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

---

[1] The debtors in these cases, along with the last four digits of their respective taxpayer ID numbers, are 1776 American Properties IV LLC (3677), 1776 American Properties V LLC (4327), 1776 American Properties VI LLC (8392), 1776 American Properties VII LLC (9340), 1776 American Properties VIII LLC (8277), APRF SP1-1 LLC (3543), Arica Lane LLC (2643), Austin Road Partners LLC (2582), Hazelwood Brownstone LLC (0949), Hazelwood Management Services LLC (1694) Independence Construction and Finance Inc. (8618), Reims Holdings LLC (8989) and Staunton Street Partners LLC (2406).

Pursuant to 11 U.S.C. §§ 105 and 363 and 365 and the Federal Rules of Bankruptcy Procedure 2002, 6004, 6007 and 9014, Hazelwood Management Services LLC ("Hazelwood" or "Movant"), moves for the entry of an order approving the sale of condominium units 203, 1603, and 1604, at 5626 Antoine Dr., Houston, Texas 77091 (collectively, the "Properties"), free and clear of all liens, claims and encumbrances to Prescient Holdings Management Group (the "**Purchaser**"), and in support thereof, respectfully represents the following:

**REQUEST FOR EMERGENCY CONSIDERATION**

1.      Movant and Purchaser entered into a Residential Condominium Contract for the sale of the Properties. Under the terms of the contract, the closing must occur no later than November 30, 2017. The Properties are not subject to a mortgage. Emergency consideration and approval of this Motion is required to allow the parties to close on the transaction as soon as possible. A delay in the closing may prejudice either the Movant, the Purchaser, or both parties.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. §157(b)(2)(M).  The statutory predicates for the relief requested in this Motion are sections 105(a), 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Venue of the Chapter 11 cases is proper in this district pursuant to 28 U.S.C. §§ 1408(1) and (2) and 11 U.S.C. § 101(2)(A).

**BACKGROUND**

**A.  Overview of the Debtors**

3.      The above captioned jointly administered Chapter 11 bankruptcy cases were each filed on January 27, 2017 ("Petition Date"), under Chapter 11 of Title 11 of the Bankruptcy Code,

2

11 U.S.C. § 101 et sq. (the "Bankruptcy Code").

4.    No trustee or examiner has been appointed in the debtors' bankruptcy cases and an official committee of unsecured creditors has not been established.

5.    The debtors continue to manage their property as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6.    Prior to the Petition Date, the debtors each retained Erich Mundinger to serve as Vice President and Chief Restructuring Officer.

**B. Operations**

7.    Historically, the debtors were managed by Jeff Fisher.  Jeff Fisher was raised in the Houston area and in 1994, Mr. Fisher moved to Asia as part of his United States Military service.  In 1997, Mr. Fisher relocated to Hong Kong and has lived in Hong Kong with his wife and family since that time. In 2008, Mr. Fisher began investing in real estate in the Houston area.  Mr. Fisher worked with friends and other business contacts in Asia who decided to invest in special purpose entities organized in the Cayman Islands.  The offshore companies would then loan money to Delaware based limited liability companies, who in turn invested in real estate in the United States.  By 2012, the US based LLC's had acquired over 70 properties worth over $10 million.

8.    The Debtors' businesses generally fit within one of two business models:

**Category 1 -- Buy and Hold Rental Properties**.  Each of these particular Debtors purchase rental properties based upon certain risk and return evaluations.  Most of the rental properties are financed through mortgages from the Cayman Islands or British Islands based lender.  The underlying notes require interest only payments with balloon payment upon maturity.  The

offshore lenders are largely funded through Asian based investors. Two of the Debtors have traditional bank financing arrangements that are secured by deeds of trusts and security agreements.

**Category II – New Home Construction.** These Debtors obtain loans from a Cayman Islands or British Virgin Islands based lender and then use the funds to purchase vacant lots in residential subdivisions. The lots are then marketed to homebuilders as part of a financing package allowing the value of the lots to be used as an equity down payment on a construction loan. The lots are deeded to the builder by the debtor and the debtor takes a subordinated loan position behind the construction loan. The debtor and the homebuilders also enter into an agreement to split the profits on the ultimate sale of the home. When the homes are sold, the proceeds are paid first to the construction lender, then to the respective debtor for the subordinated debt, and then a profit split between the homebuilder and debtor.

9.      Collectively, as of the Petition Date, the Debtors owned one hundred sixteen (116) rental single family homes / apartment units, five (5) single family homes, and seventy six (76) vacant lots. In addition, Debtors 1776 IV, 1776 V, 1776 VII and 1776 VIII hold promissory notes and profit sharing arrangements with various builders on approximately fifty eight (58) lots.

10.      As of the petition date, Hazelwood owned fifteen (15) apartment/condominium units and single family homes in the Houston and Conroe areas.

**C. Property To Be Sold.**

11.      The Properties are not subject to a mortgage. The total proposed sales price is $51,000. The units would commonly be classified as Class D property. The net sales proceeds

4

will be deposited into the Movant's DIP account.  The Properties are more particularly described

as follows:

| PROPERTY ADDRESS & LEGAL DESCRIPTION ("PROPERTIES") |
|---|
| Unit 203 Bldg. 2 - .0050 Int Common Land and Ele Oakwood Gardens Condominiums |
| Unit 1603 Bldg. 16 - .0050 Int Common Land and Ele Oakwood Gardens Condominiums |
| Unit 1604 Bldg. 16 - .0050 Int Common Land and Ele Oakwood Gardens Condominiums |

## REQUESTED RELIEF -- SALE FREE AND CLEAR

12.     By this Motion, pursuant to sections 105, 363, and 365 of the Bankruptcy Code and

Bankruptcy Rules 2002 and 6004, the Movant seeks:

      a.  authorization of the sale of the Properties to the Purchaser free and clear of all
          liens, claims, interests, and encumbrances, for a total purchase price of
          $51,000.00;
      b.  approval of the form Contract attached hereto as **Exhibit "A"** and the transaction
          contemplated therein;
      c.  authorization for payment of the 2016 and pro-rata 2017 ad-valorem property
          taxes owed on the Properties at the closing;
      d.  authorization for payment of any other secured claim on the property, including
          past due HOA assessments and fees;
      e.  authorization for payment of such normal and customary closing costs and fees;
      f.  waiver any 14-day stay imposed by Bankruptcy Rules 6004 and 6006; and
      g.  such other and further relief as is just and proper.

13.     The Properties shall be sold, transferred and conveyed free and clear of liens,

claims, and encumbrances.[2]  All liens will attach to the proceeds of the sale or be paid through the

closing by the title company.

14.     The Purchaser is an unrelated third party and the Contract has been negotiated at

arms-length.  All things considered, the Movant believes that the units are being sold for the highest

and best price.

15.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice

---

[2] To be clear, the 2017 ad valorem tax liens will remain on the Property until paid (when due), and the Declaration and Restrictive Covenants related to Silverfield homeowners association (the "HOA") constitute a covenant running with the land the sale will be subject to such Declaration and Restrictive Covenants.

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." In this case, the sale is arguably within the ordinary course of the Movant's business. Regardless, to avoid any controversy and to provide complete disclosures to all stake holders in these cases, the Movant will seek court approval of the sale of any of their real estate holdings.

16.     Approval of a proposed sale of the debtor's assets outside of the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate if the court finds that sound business reasons justify the transaction. *See In re Abbotts Dairies of Pennsylvania*, 788 F.2d 143, 145-147 (3rd Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2nd Cir. 1983). In order to win court approval for the sale of estate property other than in the ordinary course of business, the trustee need not show that the sale will produce enough money to pay all, or most claims. *In re Buchanan*, 270 B.R. 689, (Bankr. N.D. Ohio 2001).

17.     In determining whether to grant a debtor-in-possession's motion to use, sell, or lease property of the estate, the Court should grant the relief sought if the Debtor is exercising sound business judgment. *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 fn.10 (5th Cir. 1985); *In re Bombay Co.*, 2007 Bankr. LEXIS 3218 at *12.

18.     Movant is represented by RE/MAX Executives and David Hashem (collectively, "Remax") in the transaction. Purchaser is represented by Serena Zindler with Agile Management Services. Pursuant to the Order Authorizing Application to Remax [Doc. #110], Movant requests approval of the  three percent (3%) commission to Remax and the corresponding three percent (3%) commission to Purchaser's broker at closing.

## ADEQUATE AND REASONABLE NOTICE

19.     Rule 6004 of the Federal Rules of Bankruptcy Procedure requires that Notice of a proposed sale of property ... not in the ordinary course of business shall be given pursuant to Rule

2002(a)(2), (c)(1), (i), and (k) and if applicable in accordance with Section 363(b)(2) of the Code.

20.     Rule 2002(a)(2) requires twenty-one (21) day notice of a sale of assets, unless the Court shortens the notice period.   The Movant is giving written notice to all creditors and other parties requesting notice in accordance with the rule and any party asserting a lien on the Property. In addition, the Movant is giving notice to any party who has an expressed an interest in the Property. Further, the Properties are not subject to a mortgage.

## **CONCLUSION**

WHEREFORE, Hazelwood Management Services LLC, requests the Court approve the sale of the Properties free and clear of all liens, claims and encumbrances to and grant the Movant any such other relief to which it may be entitled.

DATED: November 14, 2017

Respectfully submitted,

ANDREWS MYERS, PC

/s/ T. Josh Judd
T. Josh Judd
SBN: 24036866
1885 Saint James Place, 15th Floor
Houston, TX 77056
Tel: 713-850-4200
Fax: 713-850-4211
jjudd@andrewsmyers.com

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2017, a true and correct copy of the foregoing Emergency Motion was forwarded by email to the parties listed below by the Court's ECF notification system, and via US Mail to the creditors listed on the attached service list.

*/s/ T. Josh Judd*
T. Josh Judd


Bruce Michael Badger on behalf of Creditor Green Bank, N.A.
bkcy@badgerlawoffice.com

Clinton F. Brown on behalf of Creditor Mission West Civic Improvement Association
bankruptcy@rmwbhlaw.com

H. Gray Burks, IV on behalf of Creditor SELECT PORTFOLIO SERVICING, INC.
gburks@logs.com, jboling@logs.com

Jared Brandon Caplan on behalf of Other Prof. Heather Carlile
jcaplan@bradley.com, lsamolinski@bradley.com

H Miles Cohn on behalf of Creditor Blavesco ltd
mcohn@craincaton.com, mfriery@craincaton.com;mriseden@craincaton.com

H Miles Cohn on behalf of Creditor Michael D Stein
mcohn@craincaton.com, mfriery@craincaton.com;mriseden@craincaton.com

H Miles Cohn on behalf of Defendant Blavesco Ltd
mcohn@craincaton.com, mfriery@craincaton.com;mriseden@craincaton.com

Michael J Darlow on behalf of Creditor Fort Bend Independent School District
mdarlow@pbfcm.com, tpope@pbfcm.com;mdarlow@ecf.inforuptcy.com

John P Dillman on behalf of Creditor Cypress-Fairbanks ISD
Houston_bankruptcy@publicans.com

John P Dillman on behalf of Creditor Fort Bend County
Houston_bankruptcy@publicans.com

John P Dillman on behalf of Creditor Harris Co MUD #43
Houston_bankruptcy@publicans.com

John P Dillman on behalf of Creditor Harris County
Houston_bankruptcy@publicans.com

John P Dillman on behalf of Creditor Houston Liens
Houston_bankruptcy@publicans.com

John P Dillman on behalf of Creditor Montgomery County
Houston_bankruptcy@publicans.com

John P Dillman on behalf of Creditor Southwest Mgmt Dist
Houston_bankruptcy@publicans.com

Bryan Patrick Fowler on behalf of Creditor The French Quarter on Lake Conroe HOA
bfowler@consolidated.net

T. Josh Judd on behalf of Debtor 1776 American Properties IV LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor 1776 American Properties V LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor 1776 American Properties VI LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor 1776 American Properties VII LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor 1776 American Properties VIII LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor APRF SP1-1 LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor Arica Lane LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor Austin Road Partners LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor Hazelwood Brownstone LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor Hazelwood Management Services LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor Independence Construction and Finance Inc
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor Reims Holdings LLC

jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Debtor Staunton Street Partners LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Plaintiff APRF SP1-1 LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Plaintiff Arica Lane LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Plaintiff Austin Road Partners LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Plaintiff Hazelwood Brownstone LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Plaintiff Hazelwood Management Services LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Plaintiff Reims Holdings LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

T. Josh Judd on behalf of Plaintiff Staunton Street Partners LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

Jason D Kraus on behalf of Creditor Bouman Kraus, PC
jdk@boumankraus.com

Susan C Mathews on behalf of Creditor Silverfield Homeowners Association Inc.
smathews@bakerdonelson.com, clujano@bakerdonelson.com

Craig E Power on behalf of Creditor 1776 American Properties Limited
cpower@cokinoslaw.com, msegura@cokinoslaw.com;eolson@cokinoslaw.com

Craig E Power on behalf of Creditor 1776 Investment Management Limited
cpower@cokinoslaw.com, msegura@cokinoslaw.com;eolson@cokinoslaw.com

Craig E Power on behalf of Creditor 1776 Property fund SPC
cpower@cokinoslaw.com, msegura@cokinoslaw.com;eolson@cokinoslaw.com

Craig E Power on behalf of Creditor Jeffrey W Fisher
cpower@cokinoslaw.com, msegura@cokinoslaw.com;eolson@cokinoslaw.com

Ron Satija on behalf of Creditor Noble Capital Servicing LLC
rsatija@legalstrategy.com

Ron Satija on behalf of Creditor PS Funding, Inc.
rsatija@legalstrategy.com

Kirk Anthony Schwartz on behalf of Creditor SELECT PORTFOLIO SERVICING, INC.
kschwartz@logs.com, txbksouthern@logs.com

Brian John Smith on behalf of Interested Party IPP Financial Advisers PTE Ltd
brian.smith@hklaw.com,
robert.jones@hklaw.com;brent.mcilwain@hklaw.com;william.cage@hklaw.com;warren.gluck@
hklaw.com

L David Smith on behalf of Creditor Integrity Bank
smith@csrslaw.com

Michael J Smith on behalf of Creditor Integrity Bank
msmith@csrslaw.com

Owen Mark Sonik on behalf of Creditor Spring Independent School District
osonik@pbfcm.com, tpope@pbfcm.com;osonik@ecf.inforuptcy.com

Stephen Douglas Statham on behalf of U.S. Trustee US Trustee
stephen.statham@usdoj.gov

Bobbie Leigh Stratton on behalf of Creditor Silverfield Homeowners Association Inc.
bstratton@bakerdonelson.com, clujano@bakerdonelson.com;rperez@bakerdonelson.com

US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV

Lance E Williams on behalf of Creditor Westbriar Homeowners Association
lwilliams@riddleandwilliams.com, ashanks@riddleandwilliams.com

Donald L Wyatt on behalf of Creditor French Quarter on Lake Conroe HOA
don.wyatt@wyattpc.com, ignecf@wyatt-
gracey.com;shirley.stubbs@wyattpc.com;malendy.tresp@wyattpc.com;archive@wyattpc.com

## SERVICE LIST

American Property Recovery Fund SPC-Land Lot Arbitrage SP2
PO Box 309
Ugland House
Grand Cayman, KY 1-1104
Cayman Islands

1776 American Properties 1 Limited
PO Box 957
Offshore Incorporations Centre
Road Town, Tortola
British Virgin Islands, VG1110

American Property Recovery Fund SPC Property Development Loan Fund SP3
PO Box 309, Ugland House
Grand Cayman, KY 1-1104
Cayman Islands

American Property Recovery Fund SPC American Residential SP1
PO Box 309
Ugland House
Grand Cayman, KY 1-1104
Cayman Islands

Harris County et al
c/o John P. Dillman
Linebarger Goggan Blair & Sampson, LLP
4828 Loop Central Drive, Suite 600
Houston, Texas 77081

Montgomery County
c/o John P. Dillman
Linebarger Goggan Blair & Sampson, LLP
4828 Loop Central Drive, Suite 600
Houston, Texas 77081

Willis Independent School District
c/o Yolanda Humphrey
Perdue, Fielder, Brandon, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Spring Independent School District
c/o Yolanda Humphrey
Perdue, Fielder, Brandon, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Internal Revenue Service Centralized Insolvency Operation
P. O. Box 7346
Philadelphia, PA 19101-7346

Harris County Municipal Water District #82
c/o Carl O. Sandin
Perdue, Fielder, Brandon, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Far Hills Utility District
c/o Michael Darlow
Perdue, Fielder, Brandon, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

CIT Bank, NA.
c/o Weltman, Weinberg & Reis Co.
3705 Marlane Drive
Grove City, Ohio 43123

Humble Independent School District
c/o Carl O. Sandin
1235 North Loop West, Suite 600
Houston, Texas 77008

Fort Bend County Independent School District
c/o Yolanda Humphrey
Perdue, Fielder, Brandon, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Alief County Independent School District
c/o Carl O. Sandin
Perdue, Fielder, Brandon, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Montgomery County Municipal Utility District #46
c/o Michael Darlow
Perdue, Fielder, Brandon, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Emerald Forest Utility District
c/o Carl O. Sandin
Perdue, Fielder, Brandon, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Harris County Municipal Utility District #120
c/o Carl O. Sandin
Perdue, Fielder, Brandon, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

City of Houston
c/o Michael Darlow
Perdue, Fielder, Brandon, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Beyond IT
1219 Durham Drive
Houston, Texas 77007

Canter Office Equipment
PO Box 9905
The Woodlands, Tx. 77387-6905

4818-9761-5957, v. 1



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)    11-2-2015
NOTICE:  Not For Use Where Seller Owns Fee Simple Title To Land Beneath Unit

## RESIDENTIAL CONDOMINIUM CONTRACT (RESALE)

**1. PARTIES:** The parties to this contract are _Hazelwood Management Svcs_____(Seller) and
_Prescient Holdings Management Grp_____(Buyer). Seller agrees to
sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY AND CONDOMINIUM DOCUMENTS:**
   A. The Condominium Unit, improvements and accessories described below are collectively
      referred to as the "Property".
      (1) CONDOMINIUM UNIT: Unit _____multi_____, in Building _____2, 16_____,
          of _____Oakwood Gardens Condominiums_____, a condominium project, located at
          _5626  Antoine Dr 203, 1603, 1604_____ 77091
          (address/zip code), City of _____Houston_____,County of _____Harris_____
          _.0050 INT COMMON LAND & ELE per unit_____,
          Texas, described in the Condominium Declaration and Plat and any amendments thereto
          of record in said County; together with such Unit's undivided interest in the Common
          Elements designated by the Declaration, including those areas reserved as Limited
          Common Elements appurtenant to the Unit and such other rights to use the Common
          Elements which have been specifically assigned to the Unit in any other manner. Parking
          areas assigned to the Unit are: _Not deeded individually and included in the common land_
          _____and ele per unit_____.
      (2) IMPROVEMENTS: All fixtures and improvements attached to the above described real
          property including without limitation, the following **permanently installed and built-in
          items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-
          to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas,
          mounts and brackets for televisions and speakers, heating and air conditioning units,
          security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers,
          shrubbery, landscaping, outdoor cooking equipment, and all other property owned by
          Seller and attached to the above described Condominium Unit.
      (3) ACCESSORIES:  The following described related accessories, if any: window air
          conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades,
          draperies and rods, door keys, mailbox keys, above ground pool, swimming pool
          equipment and maintenance accessories, artificial fireplace logs, and controls for:
          (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories.
      (4) EXCLUSIONS: The following improvements and accessories will be retained by Seller and
          must be removed prior to delivery of possession:_____n/a_____
          _____.
   B. The Declaration, Bylaws and any Rules of the Association are called "Documents". (Check
      one box only):
      ☒ (1) Buyer has received a copy of the Documents. Buyer is advised to read the Documents
             before signing the contract.
      ☐ (2) Buyer has not received a copy of the Documents. Seller shall deliver the Documents to
             Buyer within _____ days after the effective date of the contract. Buyer may cancel the
             contract before the sixth day after Buyer receives the Documents by hand-delivering or
             mailing written notice of cancellation to Seller by certified United States mail, return
             receipt requested. If Buyer cancels the contract pursuant to this paragraph, the contract
             will terminate and the earnest money will be refunded to Buyer.
   C. The Resale Certificate from the condominium owners association (the Association) is called
      the "Certificate". The Certificate must be in a form promulgated by TREC or required by the
      parties. The Certificate must have been prepared no more than 3 months before the date it
      is delivered to Buyer and must contain at a minimum the information required by Section
      82.157, Texas Property Code.
      (Check one box only):
      ☒ (1) Buyer has received the Certificate.
      ☐ (2) Buyer has not received the Certificate. Seller shall deliver the Certificate to Buyer within
             _____ days after the effective date of the contract. Buyer may cancel the contract
             before the sixth day after the date Buyer receives the Certificate by hand-delivering or
             mailing written notice of cancellation to Seller by certified United States mail, return
             receipt requested. If Buyer cancels the contract pursuant to this paragraph, the contract
             will terminate and the earnest money will be refunded to Buyer.
      ☐ (3) Buyer has received Seller's affidavit that Seller requested information from the
             Association concerning its financial condition as required by the Texas Property Code, and
             that the Association did not provide a Certificate or information required in the
             Certificate. Buyer and Seller agree to waive the requirement to furnish the Certificate.
   D. If the Documents reveal that the Property is subject to a right of refusal under which the
      Association or a member of the Association may purchase the Property, the effective date
      shall be amended to the date that Buyer receives a copy of the Association's certification
      that: (i) Seller has complied with the requirements under the right of refusal; and (ii) all
      persons who may exercise the right of refusal have not exercised or have waived the right to
      buy the Property. If Buyer does not receive the Association's certification within
      __n/a__ days after the effective date or if the right of refusal is exercised, this contract shall
      terminate and the earnest money shall be refunded to Buyer.

Initialed for identification by Buyer _____ _____ and Seller _____ _____    **EXHIBIT A**    TREC NO. 30-12

This form is authorized for use by Serena Zindler, a subscriber of the Houston Realtors Information Service, Inc. MLS    TAR 1605

Contract Concerning  **5626 Antoine Dr 203, 1603, 1604**   **Houston**   **TX 77091** Page 2 of 8  11-2-2015
                    (Address of Property)

**3. SALES PRICE:**
  A. Cash portion of Sales Price payable by Buyer at closing.................. $ _____**51,000.00**
  B. Sum of all financing described in the attached: ☐   Third Party Financing Addendum,
    ☐  Loan Assumption Addendum, ☐  Seller Financing Addendum ... $ _____**0.00**
  C. Sales Price (Sum of A and B)............................................ $ _____**51,000.00**

**4. LICENSE HOLDER DISCLOSURE:** Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: **Buyer LLC**

  **and Broker LLC owned by licensed sales agents Serena Zindler and William Zindler** _____.

**5. EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit $ __**3,000.00**__ as earnest money with _____**Fidelity National Title**_____, as escrow agent, at **5151 San Felipe, Ste 125** _____**Houston**    **TX 77056**__ (address). Buyer shall deposit additional earnest money of $ _____**0.00**_____ with escrow agent within __**n/a**__ days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

**6. TITLE POLICY:**
  A. TITLE POLICY: Seller shall furnish to Buyer at ☒Seller's ☐Buyer's expense an owner policy of title insurance (Title Policy) issued by _____**Fidelity National Title**_____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
    (1) Restrictive covenants common to the platted subdivision in which the Property is located.
    (2) The standard printed exception for standby fees, taxes and assessments.
    (3) Liens created as part of the financing described in Paragraph 3.
    (4) Terms and provisions of the Documents including the assessments and platted easements.
    (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
    (6) The standard printed exception as to marital rights.
    (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
    (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements.
  B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If, due to factors beyond Seller's control, the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.
  C. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed in the Commitment other than items 6A(1) through (8) above; or which prohibit the following use or activity: _____
    _____.
  Buyer must object the earlier of (i) the Closing Date or (ii) _____ days after Buyer receives the Commitment and Exception Documents. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.
  D. TITLE NOTICES:
    (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
    (2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

Initialed for identification by Buyer_____ _____ and Seller _____ _____    TREC NO. 30-12

Contract Concerning **5626 Antoine Dr 203, 1603, 1604   Houston   TX 77091** Page 3 of 8  11-2-2015
(Address of Property)

   (3) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

   (4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

   (5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER:  Notice required by §13.257, Water Code:  The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service.   There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

   (6) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows:  The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

   (7) PROPANE GAS SYSTEM SERVICE AREA:  If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code.  An addendum containing the notice approved by TREC or required by the parties should be used.

   (8) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**7. PROPERTY CONDITION:**

  A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect .

  B.  SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)

    ☐ (1) Buyer has received the Notice.

    ☐ (2) Buyer has not received the Notice. Within _____ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

    ☒ (3) The Texas Property Code does not require this Seller to furnish the Notice.

  C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

  D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

   (Check one box only)

    ☒ (1) Buyer accepts the Property As Is.

    ☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments:_____
    _____.
    (Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

  E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood

Initialed for identification by Buyer _____ _____ and Seller _____ _____     TREC NO. 30-12
This form is authorized for use by Serena Zindler, a subscriber of the Houston Realtors Information Service, Inc. MLS     TAR 1609

InstanetFORMS

Contract Concerning  **5626  Antoine Dr 203, 1603, 1604      Houston      TX  77091** Page 4 of 8  11-2-2015
(Address of Property)

destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing:  (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and  treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs and treatments.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. RESIDENTIAL SERVICE CONTRACTS:  Buyer  may purchase a residential service  contract from a  residential service company  licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $_____0.00_____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

**8. BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

**9. CLOSING:**

A. The closing of the sale will be on or before _____Nov_____30____, 20_17___, or within 7 days after objections to matters disclosed in the Commitment have been cured, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B.   At closing:

(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.

(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.

(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.

(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

(5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has acquired the Property and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

**10. POSSESSION:**

A. Buyers Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

B. Leases:

(1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.

(2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

THIS CONTRACT IS SUBJECT TO APPROVAL BY THE UNITED STATES BANKRUPTCY COURT.  THIS CONTRACT WILL BE SUBMITTED FOR APPROVAL TO THE UNITED STATES BANKRUPTCY AFTER EXECUTION AND EXPIRATION OF ANY OPTION PERIOD.  IF THIS CONTRACT IS NOT APPROVED BY THE UNITED STATES BANKRUPTCY COURT, THE BUYER WILL BE REFUNDED THEIR EARNEST MONEY DEPOSIT

Initialed for identification by Buyer [ST] _____ and Seller [FM] _____

TREC NO. 30-12
TAR 1605

Contract Concerning  **5626  Antoine Dr 203, 1603, 1604   Houston       TX  77091** Page 5 of 8  11-2-2015
(Address of Property)

**12. SETTLEMENT AND OTHER EXPENSES:**
   A. The following expenses must be paid at or prior to closing:
   (1) Expenses payable by Seller (Seller's Expenses):
      (a) Releases of existing liens, including prepayment penalties and recording fees; lender, FHA, or VA completion requirements; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
      (b) Seller shall also pay an amount not to exceed $ _____0.00_____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
   (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
   (3) Except as provided by 12(A)(4) below, Buyer shall pay any and all Association fees or other charges resulting from the transfer of the Property not to exceed $_____0_____ and Seller shall pay any excess.
   (4) Buyer shall pay any deposits for reserves required at closing by the Association.
   B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, maintenance fees, regular condominium assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Cash reserves from regular condominium assessments for deferred maintenance or capital improvements established by the Association will not be credited to Seller. Any special condominium assessment due and unpaid at closing will be the obligation of Seller.

**14. CASUALTY LOSS:** If any part of the Unit which Seller is solely obligated to maintain and repair under the terms of the Declaration is damaged or destroyed by fire or other casualty, Seller shall restore the same to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. If any part of the Common Elements or Limited Common Elements appurtenant to the Unit is damaged or destroyed by fire or other casualty loss, Buyer will have 7 days from receipt of notice of such casualty loss within which to notify Seller in writing that the contract will be terminated unless Buyer receives written confirmation from the Association that the damaged condition will be restored to its previous condition within a reasonable time at no cost to Buyer. Unless Buyer gives such notice within such time, Buyer will be deemed to have accepted the Property without confirmation of such restoration. Seller will have 7 days from the date of receipt of Buyer's notice within which to cause to be delivered to Buyer such confirmation. If written confirmation is not delivered to Buyer as required above, Buyer may terminate this contract and the earnest money will be refunded to Buyer. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

Initialed for identification by Buyer_____  _____ and Seller _____  _____

TREC NO. 30-12
TAR 1605

Contract Concerning **5626  Antoine Dr 203, 1603, 1604  Houston  TX  77091** Page 6 of 8  11-2-2015
(Address of Property)

**18. ESCROW:**

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| **To Buyer** | **To Seller** |
|---|---|
| at:   Prescient Holdings Mgmt | at:   c/o  David Hashem, Agent |
| Phone:   832-233-3919 | Phone:   832-277-4847 |
| Fax: | Fax: |
| E-mail:   serena.zindler@hotmail.com | E-mail:   davidhashem@yahoo.com |

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

❏ Third Party Financing Addendum

❏ Loan Assumption Addendum

❏ Buyer's Temporary Residential Lease

❏ Seller's Temporary Residential Lease

❏ Addendum for Sale of Other Property by Buyer

❏ Addendum for "Back-Up" Contract

❏ Seller Financing Addendum

❏ Addendum for Coastal Area Property

❏ Short Sale Addendum

☒ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

❏ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

❏ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

❏ Addendum for Release of Liability on Assumption of FHA, VA, or Conventional Loan Restoration of Seller's Entitlement for VA Guaranteed Loan

❏ Addendum for Property in a Propane Gas System Service Area

❏ Other (list): _____

Initialed for identification by Buyer _____ _____ and Seller _____ _____

TREC NO. 30-12
TAR 1605

Contract Concerning **5626  Antoine Dr 203, 1603, 1604**      **Houston**      **TX  77091** Page 7 of 8  11-2-2015
(Address of Property)

**23. TERMINATION  OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $_____**0.00**_____ (Option Fee) within 3 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within ____**n/a**____ days after the effective date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified.  If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐ will ☐ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**24. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is: _____

Seller's
Attorney is: _____

_____

_____

Phone:  _____

Phone:  _____

Fax:  _____

Fax:  _____

E-mail:  _____

E-mail:  _____

---

**EXECUTED the _____ day of _____, 20_____ (EFFECTIVE DATE).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

---

Buyer  **Serena Zindler**

Seller  **Hazelwood Management Services LLC**

Buyer

Seller

---

The form of this contract has been approved by the Texas Real Estate Commission.   TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 30-12. This form replaces TREC NO. 30-11**.**

TREC NO. 30-12
TAR 1605

Contract Concerning   **5626  Antoine Dr 203, 1603, 1604      Houston      TX  77091** Page 8 of 8  11-2-2015
(Address of Property)

## BROKER  INFORMATION
(Print name(s) only. Do not sign)

| | |
|---|---|
| **Agile Management Services**          9005746 | **Re/Max Executives** |
| Other Broker Firm                    License No. | Listing Broker Firm                    License No. |

represents   ☒ Buyer only as Buyer's agent        represents   ☐ Seller and Buyer as an intermediary

☐ Seller as Listing Broker's subagent        ☒ Seller only as Seller's agent

| | |
|---|---|
| **Serena Zindler**                   0679936 | **David Hashem** |
| Associate's Name                    License No. | Listing Associate's Name                License No. |
| | |
| Licensed Supervisor of Associate    License No. | Licensed Supervisor of  Listing Associate    License No. |
| **49 Wynden Oaks Dr** | |
| Other Broker's Address                    Fax | Listing Broker's Office Address              Fax |
| **Houston           TX          77056** | |
| City                    State          Zip | City                    State          Zip |
| **serena@agilemanagementservices.com  (832) 233-3919** | |
| Associate's Email Address              Phone | Listing Associate's Email Address          Phone |
| | |
| | Selling Associate's Name                License No. |
| | |
| | Licensed Supervisor of Selling Associate    License No. |
| | |
| | Selling Associate's Office Address              Fax |
| | |
| | City                    State          Zip |
| | |
| | Selling Associate's Email Address          Phone |

Listing Broker has agreed to pay Other Broker_____**3%**_____of the total sales price when the Listing Broker's fee is received. Escrow agent is authorized and directed to pay other Broker from Listing Broker's fee at closing.

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____ is acknowledged.

_____        _____
Seller or Listing Broker                    Date

## CONTRACT AND EARNEST MONEY RECEIPT

Receipt of ☐Contract and ☐$_____ Earnest Money in the form of _____ is acknowledged.
Escrow Agent: **Fidelity National Title**_____        Date: _____

By: _____
                                              _____
                                              Email Address

**5151 San Felipe, Ste 125**
Address                                        Phone: _____

**Houston           TX          77056** Fax: _____
City                    State          Zip

This form is authorized for use by Serena Zindler, a subscriber of the Houston Realtors Information Service, Inc. MLS